IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Amber Burbage f/k/a Amber Pippin-McAbee, | ) ) ) | Civil Action No.2:13-cv-2333-CWH-WWD |
| Plaintiff, | ) ) | |
| v. | ) ) | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| CGI Federal Inc. f/k/a Stanley Inc., | ) ) ) | |
| Defendant. | ) ) | |

This matter is before the Court upon Defendant's Partial Motion to Dismiss. (Dkt. No. 12.) The Plaintiff has pled claims for, *inter alia*, sexual harassment and discrimination, religious harassment and discrimination, and violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"). (See Dkt. No. 1.) In the Partial Motion to Dismiss, Defendant seeks dismissal of Plaintiff's fifth cause of action, her claim for violation of the ADA. (See Dkt. No. 12.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTUAL BACKGROUND**

Plaintiff alleges that she was hired in July of 2006 as a secretary and promoted to the position of Administrative Officer in 2008 or 2009; as an Administrative Officer she "performed an array of duties including human resource duties." (Compl. ¶¶ 11-12.) Plaintiff alleges that although she originally reported to Richard Bates in her position as an Administrative Officer, Bates was removed and replaced by Mike Alderson. (Id. ¶ 13.) According to Plaintiff, Alderson "practiced a strict form of religion and often spoke about his religion at work," and he was "very judgmental towards females and those who did not follow his strict brand of religion." (Id. ¶¶ 15-16.) Plaintiff alleges that Alderson "express[ed]

disapproval with plaintiff because plaintiff was a single mother who lived with her boyfriend. He would also tell plaintiff that her teenage child should go to church and that plaintiff's teenage daughter would be better behaved if she lived in a structured environment and went to church." (Id. ¶ 16.)

Plaintiff alleges that in July or August of 2011, Defendant "had to effect a reduction in force" ("RIF"), and Plaintiff "had some involvement in this task, as some of plaintiff's job duties included human resource functions." (Id. ¶ 19.) Plaintiff states in her Complaint,

> 20. . . . [I]n choosing which employees were to be selected for the RIF, defendant was supposed to rate each employee's overall performance and then select the lowest performing employees to be laid off. Instead, plaintiff, as well as others, observed that Alderson would pick who he wanted to terminate, and then he would manipulate their ratings so that they were rated the lowest and, thus, subject to the RIF.

> 21. . . . [P]laintiff, as well as others, further noticed that, of those employees chosen to be laid off, Alderson selected at least three (3) employees, all with some type of disability or serious health condition. All of these employees had to take FMLA leave or other leave from work to deal with their own disabilities or health conditions or the health conditions of immediate relatives. At the same time, Alderson retained less-qualified employees who did not suffer from disabilities or serious health conditions and/or who did not have to take FMLA or other leave from work because of their disabilities or health conditions.

> 22. . . . [A]s such, in or around, July/August of 2011 plaintiff complained to Alderson that the way he was selecting employees for the RIF was discriminatory and/or could be viewed as discriminatory under the ADA and the FMLA and that it could come back to "bite" the company.

(Compl. ¶¶ 20-22.) Plaintiff alleges that after a laid-off employee filed suit, Alderson asked Plaintiff how he could be sued individually, when he never spoke to the employee; Plaintiff "responded that he laid the employee out when she was out on FMLA leave; that she had lupus; that she had suffered a stroke; and that he never disciplined the said employee." (Id. ¶ 23.) Plaintiff alleges "she told Alderson that she felt selecting the employee for the RIF

under . . . [those] circumstances was discrimination," but Alderson "just laughed off plaintiff's comment." (Id.)

In her fifth cause of action, Plaintiff asserts that she complained about disability discrimination to the Defendant in good faith, and that "shortly thereafter engaging in the said protected activity, defendant demoted and harassed plaintiff; stripped her of her duties; locked her out of her office; disciplined her without cause; threatened to fire her without cause; and constructively discharged plaintiff." (Id. ¶¶ 91-93.)

Relevant to the instant motion is Defendant's contention that "Plaintiff failed to file a timely Charge of Discrimination . . . with respect to any allegations asserted in her Fifth Cause of Action." (Dkt. No. 12 at 1 of 5.)

## **DISCUSSION**[1]

As noted above, only one claim is at issue in the instant Partial Motion to Dismiss: Plaintiff's claim for retaliation in violation of the ADA. (See Dkt. No. 12.) Defendant contends that this cause of action should be dismissed because Plaintiff "does not allege, or even

---

[1]Although Defendant moved for dismissal pursuant to Rule 12(b)(6), in Agolli v. Office Depot, Inc., 548 F. App'x 871 (4th Cir. 2013), the Fourth Circuit indicated that a similar issue "may have been more properly addressed under Rule 12(b)(1), instead of Rule 12(b)(6)." Agolli, 548 F. App'x at 875 (citing Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 406 (4th Cir. 2013)); see also Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009) ("[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." (citing Davis v. N.C. Dep't of Corrs., 48 F.3d 134, 138-40 (4th Cir. 1995))). However, in Arbaugh v. Y&H Corp., 546 U.S. 500 (2006), the Supreme Court held that "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." Arbaugh, 546 U.S. at 516. The Court stated,

> Of course, Congress could make the employee-numerosity requirement "jurisdictional," just as it has made an amount-in-controversy threshold an ingredient of subject-matter jurisdiction in delineating diversity-of-citizenship jurisdiction under 28 U.S.C. § 1332. But neither § 1331, nor Title VII's jurisdictional provision, 42 U.S.C. § 2000e–5(f)(3) (authorizing jurisdiction over actions "brought under" Title VII), specifies any threshold ingredient akin to 28 U.S.C. § 1332's monetary floor. Instead, the 15–employee threshold appears in a separate provision that "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

Arbaugh, 546 U.S. at 514-15. Regardless of whether Defendant's motion is considered pursuant to Rule 12(b)(6) or Rule 12(b)(1), dismissal is proper, and the undersigned therefore recommends granting Defendant's Partial Motion to Dismiss (Dkt. No. 12).

mention, retaliation in violation of the ADA (or any other claim arising under the ADA) in her Notice of Charge of Discrimination or Charge of Discrimination." (Dkt. No. 12 at 3 of 5.) Instead, Defendant asserts, Plaintiff's Charge of Discrimination "alleges only retaliation 'for opposing unlawful employment practices, in violation of Title VII of the Civil Rights Act of 1964, as amended," and the "disability boxes are not checked on either the Notice of Charge of Discrimination or the Charge of Discrimination." (Id.)

Before a plaintiff may file suit under the ADA, a plaintiff must exhaust his or her administrative remedies by bringing a charge with the Equal Employment Opportunity Commission ("EEOC"). See Davis v. Va. Commonwealth Univ., 180 F.3d 626, 628 n.3 (4th Cir. 1999). As the Fourth Circuit explained in Syndor v. Fairfax County, Va., 681 F.3d 591 (4th Cir. 2012),

> Rather than "a formality to be rushed through," this exhaustion requirement is "an integral part of the Title VII enforcement scheme." Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005). For one thing, requiring a party to file a charge with the EEOC "ensures that the employer is put on notice of the alleged violations," Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005), thereby giving it a chance to address the alleged discrimination prior to litigation. This means that injured parties can often obtain relief far earlier than they would be able to in the courts, where "the ponderous pace of formal litigation" can force "victims of discrimination . . . to wait while injustice persists." Chacko, 429 F.3d at 510 (internal quotation marks and citation omitted). For another, the requirement places the resolution of employment discrimination disputes initially in the hands of the EEOC. Allowing this agency the first crack at these cases respects Congress's intent "to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes." Chris v. Tenet, 221 F.3d 648, 653 (4th Cir. 2000).

Syndor, 681 F.3d at 593. Because "[t]he goals of providing notice and an opportunity for an agency response would be undermined . . . if a plaintiff could raise claims in litigation that did not appear in his EEOC charge," the Fourth Circuit has "held that the 'scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents.'" Syndor, 681 F.3d at 593 (quoting Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009)).

In the instant case, the Notice of Charge of Discrimination (the "Notice") lists the following issues: "constructive discharge, demotion, discipline, harassment, sexual harassment, terms/conditions." (Dkt. No. 12-1 at 2 of 2.) The Notice further provides,

> The Charging Party alleges the Respondent subjected her to different terms and conditions of employment, sexual harassment and discrimination on the basis of her sex (female) and her religion (Christian). The Charging Party further alleges she was constructively discharged in retaliation for opposing unlawful employment practices.

(Id.) In the "Circumstances of Alleged Discrimination" section of the Notice, the following boxes are checked: sex, religion, and retaliation. (Id.) The "disability" box is not checked. (Id.) The top of the Notice states, "This is notice that a charge of employment discrimination has been filed against your organization under" followed by various boxes; "Title VII of the Civil Rights Act (Title VII)" is checked, but "The Americans with Disabilities Act (ADA)" is not. (Id.)

The Charge of Discrimination ("Charge") likewise has the boxes for sex, religion, and retaliation checked; the box for disability is not checked. (Dkt. No. 12-2 at 2 of 3.) The Charge provides the "particulars" as follows:

> I. I was hired by the above employer in July 2006, as Secretary and was later promoted to Administrative Officer. Beginning on or about August 1, 2011, I was subjected to harassment, sexual harassment, discipline, demotion and different terms and conditions of employment due to my sex and religion. I complained internally. On May 21, 2012, I resigned (constructive discharge).
>
> II. No valid reason was given regarding my discipline and demotion. No action was taken regarding my complaint.
>
> III. I believe that I have been discriminated against because of my sex (female), religion (Christian), and in retaliation for opposing unlawful employment practices, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Dkt. No. 12-2 at 2 of 3.)

In opposing Defendant's motion, Plaintiff points to the documents she submitted to initiate her complaint to the EEOC: her cover letter and affidavit. (See Dkt. No. 14-1; Dkt. No. 14-2.) Referencing various paragraphs of that affidavit, Plaintiff contends that it "clearly states the basis for the plaintiff's ADA retaliation claim in sharp detail." (Dkt. No. 14 at 1-2 of 7.) Plaintiff states that she "does not have a disability claim where she alleges she is disabled" but instead "only alleges retaliation for complaining about disability discrimination directed at other employees." (Dkt. No. 14 at 2-3 of 7.)

The only issue before the Court is whether Plaintiff's ADA claim is barred. Plaintiff points to the following paragraphs of her Affidavit: 11-15, and 42-43. (See Dkt. No. 14 at 2 of 7.) In Paragraphs 13 and 14, Plaintiff stated that Alderson laid off three employees "who had to miss work to deal with their own health conditions or the health conditions of immediate relatives," but Alderson retained employees less qualified. (Dkt. No. 14-2 at 3-4 of 8.) Plaintiff further stated in her Affidavit that she complained to Alderson that such actions were discriminatory. (Id. at 4 of 8.) Paragraph 43 states,

> [T]he above is merely a summary of the facts giving rise to my claim. It is not intended as an exhaustive account of facts or evidence. There may be other relevant facts or evidence not stated herein. It is my intent only to set forth facts sufficient to initiate claims for religious and gender discrimination, sexual harassment, and retaliation based upon reporting gender and disability discrimination, as well as sexual harassment.

(Id. at 8 of 8.)

Despite the requirement of exhaustion, the requirement "should not become a tripwire for hapless plaintiffs." Syndor, 681 F.3d at 594. A plaintiff may advance claims in his or her subsequent civil suit "so long as 'a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation.'" Id. (quoting Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000)). The Fourth Circuit stated in Syndor,

6

> We have therefore found exhaustion where both the administrative complaint and formal litigation concerned "discriminat[ion] in promotions" but involved different aspects of the "promotional system," Chisholm v. U.S. Postal Serv., 665 F.2d 482, 491 (4th Cir. 1981), and where both the EEOC charge and the complaint included claims of retaliation by the same actor, but involved different retaliatory conduct. Smith, 202 F.3d at 248. In doing so, we have sought to strike a balance between providing notice to employers and the EEOC on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other.

Syndor, 681 F.2d at 594.

Although Plaintiff did include retaliation on the basis of disability discrimination in her affidavit, no portion of the Charge or Notice even hints at a claim pursuant to the ADA or otherwise related to any disabilities: no such box is checked, and the narrative includes no such a claim. Plaintiff points to her cover letter to the EEOC, but that cover letter does not mention either the ADA or disability discrimination. (See Dkt. No. 14-1.) In light of the foregoing, the undersigned recommends granting Defendant's Partial Motion to Dismiss (Dkt. No. 12), and dismissing Plaintiff's fifth cause of action. See Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 408 (4th Cir. 2013) ("[P]ersons alleging discrimination have a different form of recourse if they determine that their initial charge does not read as they intended: they may, as [the plaintiff] did, file an amended charge with the EEOC. The intake questionnaire and the letters [the plaintiff] submitted to the EEOC cannot be read as part of her formal discrimination charge without contravening the purposes of Title VII." (footnote and citation omitted)); Miles v. Dell, Inc., 429 F.3d 480, 492 (4th Cir. 2005) (holding that retaliation is not fairly encompassed in a discrimination charge when the plaintiff "did not check the retaliation box on her charge form, and the narrative explaining her charge made no mention of retaliation"); Atkins v. Sw. Bell Tel. Co., 137 F. App'x 115, 118 (10th Cir. 2005) (affirming district court's conclusion that the plaintiff had not exhausted administrative remedies, stating, "Plaintiff's formal charge, filed approximately ten months after she

7

submitted her intake questionnaire, did not include any indication that she wished to pursue a retaliation claim or describe any facts that would support such a claim. The omission of any such material in the later-filed formal charge indicates that Plaintiff had abandoned this claim."); Teffera v. N. Tex. Tollway Auth., 121 F. App'x 18, 21 (5th Cir. 2004) (concluding the district court correctly dismissed the plaintiff's retaliation claim for not exhausting it with the EEOC where the plaintiff "checked 'retaliation' on the *pre-charge EEOC form*, [but] he did *not* do so on the EEOC charge"); Black v. Mission Hosp., Inc., Civ. A. No. 1:11cv146, 2012 WL 112234, at *3-4 & n.1 (W.D.N.C. Jan. 12, 2012); Talbot v. U.S. Foodservice, Inc., 191 F.Supp.2d 637, 640 (D. Md. 2002) ("Where a litigant has neither checked the box for discrimination, nor mentioned disability discrimination or the ADA anywhere in his charge of discrimination, the EEOC cannot reasonably have been expected to have investigated disability discrimination."); Price v. Harrah's Md. Heights Operating Co., 117 F.Supp. 2d 919, 921-22 (E.D. Mo. 2000) (dismissing retaliation claim due to failure to exhaust where plaintiff did not check the box for retaliation and did not specifically allege retaliation in the text of the charge).

## **CONCLUSION**

Wherefore, it is RECOMMENDED that Defendant's Partial Motion to Dismiss (Dkt. No. 12) be GRANTED.

IT IS SO RECOMMENDED.

_____
WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

July 16, 2014
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).